UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOSEPH HENDERSON,<br><br>    Petitioner,<br>v.<br>RENEE BAKER, et al.,<br><br>    Respondents. | Case No. 3:14-cv-00639-RCJ-WGC<br><br>ORDER |

Joseph Henderson's first-amended 28 U.S.C. § 2254 habeas corpus petition is before the court for final disposition on the merits. As discussed below, the petition is denied.

**I.    Procedural History and Background**

This case arises from a 2004 home invasion. Three men, two armed and masked, entered a man and a woman's home, tied them up, and stole cash. One of the masked men sexually assaulted the woman downstairs and again upstairs in the master bedroom. The case hinged on DNA evidence, and a jury found Henderson guilty of count 1: conspiracy to commit burglary; count 2: burglary while in possession of a firearm; count 3: conspiracy to commit first-degree kidnapping; counts 4 and 5: first-degree kidnapping with use of a deadly weapon; count 6: conspiracy to commit sexual assault; counts 7, 8 and 9: sexual assault with use of a deadly weapon; count 10: conspiracy to commit robbery; counts 11 and 12: robbery with use of a deadly weapon; count 13: open or gross lewdness; and count 14: battery with use of a deadly weapon

resulting in substantial bodily harm (exhibit 42).[1] The state district court sentenced him to what amounted in the aggregate to a life term with a minimum parole eligibility of about 116 years, with almost 3 and one-half years' credit for time served. Exh. 45. Judgment of conviction was filed September 24, 2008. Exh. 46.

The Nevada Supreme Court affirmed Henderson's convictions on direct appeal and affirmed the denial of his state postconviction petition. Exhs. 61, 103.

Henderson submitted a federal habeas corpus petition (ECF No. 7). This court granted his motion for appointment of counsel, and Henderson filed a counseled, first-amended petition (ECF No. 18). Respondents have now answered Henderson's remaining claims, and he has replied (ECF No. 39, 45).

## II.    Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts

---

[1] The exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 23, and are found at ECF Nos. 24-29.

2

with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the

3

state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### III. Instant Petition

#### a. Ground 1

Henderson contends that the prosecutor violated his Fourteenth Amendment due process and fair trial rights by failing to ensure DNA samples remained for retesting, which deprived Henderson of a meaningful opportunity to challenge the State's most critical, if not sole, evidence (ECF No. 18, pp. 20-25). He also argues in ground 1 that the trial court erred by failing to preclude the State from presenting evidence of the DNA and/or by failing to limit the State's use of the evidence.

The State's loss or destruction of potentially exculpatory evidence violates due process only when the evidence "possess[es] an exculpatory value that was apparent before the evidence was [lost or] destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *see also United States v. Bingham*, 653 F.3d 983, 994 (9th Cir. 2011). However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58

4

(1988); see also *Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) (*per curiam*). "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56 n. *; *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013). Even negligence in failing to preserve potentially useful evidence is not sufficient to constitute bad faith and does not violate due process. *Youngblood*, 488 U.S. at 58; see also *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011) ("Bad faith requires more than mere negligence or recklessness.").

Among other charges, the State charged Henderson with 2 counts of sexual assault with use of a deadly weapon and 1 count of conspiracy to commit sexual assault. Exh. 2. After the incident, Julie Kim underwent a sexual assault exam at the hospital. Metro inputted DNA samples obtained from Kim's exam into the nationwide Combined DNA Index System (CODIS). See exh. 38, p. 109. CODIS identified Henderson as a possible DNA match, Metro obtained a buccal sample from Henderson and conducted a DNA match test examining three primary areas—breast swabs, vaginal swabs, and the bedsheet. Henderson was ultimately identified as the source of the DNA profile found on the three types of swabs.

In August 2007, the defense requested a continuance due to the possibility that their expert would conduct additional testing of the samples. Exh. 13, p. 6. Defense counsel advised the court that the State had already conducted DNA tests, but there might not be enough material for a second test. Defense counsel informed the court that their expert was reviewing the State's report and would have a decision by the next hearing date.

In September 2007, defense counsel advised the court that they were leaning toward retesting but had to speak further with the defendant. *Id.* at 7. The defense said that trial would have to be continued as the lab would require three to four months to

5

test. Shortly thereafter defense counsel advised the court that they were going forward with testing.

On March 19, 2008, defense counsel advised the court they would not be ready for trial in April because they had not yet received the DNA results, only a preliminary examination by their expert, Norah Rudin. Exh. 23, p. 2.

On April 2, 2008, defense counsel announced they had consulted with Rudin but did not think they would call her as a witness. Exh. 24. Defense counsel also announced they would not retest the DNA and were ready for trial. *Id.*

Thereafter, on June 3, 2008, Henderson filed a motion to dismiss for destruction of evidence and a motion in limine to preclude misleading arguments regarding the DNA material. Exhs. 25, 26.

The court held a hearing Henderson's motions. Exh. 30. As to the destruction of evidence, defense counsel argued there was nothing left of the breast swabs for the defense to test. The State advised that they had verified with the lab that there was an extraction of the breast swab that could be profiled. The defense further argued that there was nothing in the record as to the method of extraction issue. The court denied the motion to dismiss. *Id.* at 6. In the alternative, defense counsel requested that the court preclude the State from presenting evidence regarding the breast swab as the evidence could not be retested. The court denied the request at that time but advised that the motion could be renewed at any time during trial. *Id.* at 7.

As to the defense's motion in limine, the State stated that they would not proffer an improper argument and would not give percentage numbers. Defense counsel further argued that the State's expert could not testify that Henderson's identity was "assumed" based on the DNA results but could only give statistics. Following an extended argument as to the holding in the Ninth Circuit case *Brown v. Farwell*, 525 F.3d 787, 785 (9th Cir. 2008), overruled on other grounds by *McDaniel v. Brown*, 558

U.S. 120 (2010), the court denied the motion. Both parties then announced ready for trial.

Julie Kim testified at trial that one of the intruders licked her breasts, put his fingers insider her vagina and inserted his penis into her vagina first when she was downstairs on the couch and again when he brought her upstairs to the bed in the master bedroom. Exh. 34, pp. 96-140. He ejaculated on the bed sheet.

During trial, Metro forensic scientist David Welch testified outside of the jury's presence about the procedure he used to test the breast swabs:

> In my notes I indicate that there is an extract left. As I – as I mentioned in part of my notes, swabs were extracted.
>
> It was my opinion at that time that I would take the two swabs, extract them both, because I felt I would have abetter chance of getting a profile.
>
> In a case like that where we consume the entire – both swabs, what we would do is we would leave – I'll end up with a certain amount of liquid, very small amount, like a drop of liquid.
>
> In my notes I indicate that an extract was remaining. In other words, after I performed my testing the breast swabs were consumed in the analysis, but there was an extract that was left that was put into a freezer at the DNA lab for possible future examination.

Exh. 38, pp. 5-6. Back in front of the jury Welch testified that he tested oral, breast, vaginal and rectal swabs from Kim. Exh. 38, pp. 19-63; 41-42. Welch testified again that he consumed the two breast swabs and was able to pull a DNA profile out of what he extracted from the swabs. He stated that he was not able to get any DNA information from the vaginal swabs. *Id.* at 45-46, 50.

Kathy Gunther, another Metro forensic analyst, testified that based on the testing that Welch completed, she was provided a preliminary profile via CODIS for Henderson as a match. Exh. 38, pp. 102-155; exh. 39, pp. 2-21. She stated that she tested Henderson's buccal swab and compared the DNA profile to the swabs from Kim. Gunther stated: "at every location the DNA matched or compared positively, and I could not exclude Joseph Henderson in any of the locations. Therefore, the samples matched

7

each other." *Id.* at 112. Gunther concluded that the DNA profile from the breast swab was the same as Henderson's reference buccal sample and that they matched. She stated that she concluded that the profile could only have come from Henderson or an identical sibling and thus she concluded that Henderson was the source of the DNA on the breast swab. *Id.* at 115-117. Gunther tested a portion of the remaining vaginal swabs, preserved a portion for any retesting, but did not find sufficient DNA. However, based on further testing of the bedsheet, Gunther concluded that the sperm DNA profile from the vaginal swab, male portion, matched Henderson's DNA profile and that Henderson was the source of that DNA. *Id.* at 131. In response to the State's questioning, Gunther testified that in her professional opinion, to a reasonable degree of scientific certainty, the male contributor on the bed sheet, from the vaginal swabs and from the breast swabs was Henderson. Exh. 39, p. 21.

The Nevada Supreme Court rejected Henderson's claims related to the use of the DNA evidence on direct appeal:

> First, Henderson claims that the district court erred by denying his motion to dismiss the information and alternative motion to preclude the State's DNA evidence based on the State's alleged consumption of all of the available DNA material. Because Henderson's claim that the State did not preserve DNA material from each sample for defense retesting is belied by the record, we conclude that the district court did not abuse its discretion. *See Hill v. State*, 188 P.3d 51, 54 (Nev. 2008).
>
> Second, Henderson claims that the district court erred by denying his pretrial motion to preclude the improper use of DNA evidence. Henderson does not allege that any improper DNA evidence or argument was presented to the jury, and therefore we conclude that this claim is wholly without merit.

Exh. 61.

Federal ground 1 lacks merit. The record belies Henderson's claim that no DNA material remained for retesting. In his federal petition he again fails to point to any alleged improper DNA evidence, testimony, or argument that was presented to the jury. Henderson has failed to demonstrate that the Nevada Supreme Court decision was

8

contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is denied as to ground 1.

### b. Ground 2

Henderson alleges that his trial counsel was ineffective in violation of his Sixth and Fourteenth Amendment rights when they failed to retest the DNA materials the State had preserved (ECF No. 18, pp. 25-27). Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations

omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any

reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

Here, Henderson's trial counsel, Norman Reed, testified at the evidentiary hearing on his state postconviction habeas corpus petition. Exh. 76, pp. 6-77. Reed stated that the defense had their expert review the entire forensic file. The defense expert agreed with the ultimate conclusion reached by Metro. Reed determined not to call the expert as a trial witness because she would have testified that while she disagreed with some of the interpretation, she agreed with the overall results, including the results from the bed sheet. The expert assisted the defense in developing questions for cross examination of Welch and Gunther. Reed stated that they did not retest the results on the advice of the defense expert. *Id.* at 39.

The Nevada Supreme Court affirmed the denial of this claim in Henderson's state postconviction petition:

> First, appellant argues that his trial counsel were ineffective for failing to hire an expert to review the DNA evidence and for failing to have the DNA evidence retested. We conclude that substantial evidence supports the district court's decision to deny this claim. At the evidentiary hearing, trial counsel testified that they had consulted with a forensic DNA expert before trial and had her review all of the DNA reports and evidence. Thus, appellant's claim that trial counsel failed to obtain an expert is belied by the record. Further, trial counsel testified that, based on the DNA expert's advice and determination that the testing procedures were done correctly and that appellant was the source of the three separate DNA samples, trial counsel decided not to retest the DNA. The district court determined that the decision not to retest the DNA was a reasonable trial strategy in light of the expert's opinion and the fact that the results of the retest could have been used against appellant at trial. The district court's factual findings are supported by substantial evidence, and appellant fails to

11

> address those factual findings or present any argument on appeal demonstrating that the district court erred in denying this claim.

Exh. 103. Henderson has not shown that the Nevada Supreme Court's decision affirming the dismissal of the claims in federal ground 2 is claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The court accordingly denies federal ground 2.

Accordingly, Henderson's petition is denied in its entirety.

## IV.    Certificate of Appealability

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Henderson's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Henderson's claims.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition (ECF No. 18) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: This 7th day of October, 2019.

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE